**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **TIARE TECHNOLOGY, INC.,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | **Civil Action No. 2:21-cv-303** |
| **v.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **LITTLE CAESAR ENTERPRISES, INC.,** | § | |
| | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

COMES NOW Plaintiff Tiare Technology, Inc. ("Tiare") and files this Original Complaint for Patent Infringement against Defendant Little Caesar Enterprises, Inc. ("Little Caesar" or "Defendant"), alleging as follows:

## I.     INTRODUCTION

1.     Tiare invented groundbreaking mobile-ordering technology in the early 2000s and built its business on its inventions.  The fruits of this technology include a patent portfolio that includes the asserted claims in this case.  The mobile-ordering market has grown exponentially in recent years (and the COVID-19 pandemic has only accelerated the growth).  Bigger companies have disregarded Tiare's patent rights.  Little Caesar is one of those companies, and this case is to enforce Tiare's rights and redress the harm to Tiare.

## II.     NATURE OF THE SUIT

2.     This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

### III.    THE PARTIES

3.      Plaintiff **Tiare Technology, Inc.** is a Delaware corporation that maintains a corporate address at PO Box 8312, Blackwood, NJ 08012.

4.      Upon information and belief, Defendant **Little Caesar Enterprises, Inc.** is a corporation organized and existing under the laws of the State of Michigan with principal places of business located at 2211 Woodward Avenue, Detroit, Michigan 48201.  Little Caesar may be served with process through its registered agent CT Corp System, 1999 Bryan Street, Suite 900, Dallas, TX 75201.

### IV.    JURISDICTION AND VENUE

5.      This action arises under the patent laws of the United States, Title 35 of the United States Code.  Thus, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.      This Court has personal jurisdiction over Little Caesar.

7.      Little Caesar has committed, and continues to commit, acts of infringement in this District, has conducted business in this District, and/or has engaged in continuous and systematic activities in this District.

8.      This Court has personal jurisdiction over Little Caesar in this action because Little Caesar has committed acts within this District giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over Little Caesar would not offend traditional notions of fair play and substantial justice. Little Caesar has committed and continues to commit acts of infringement in this Little Caesar by, among other things, offering to

sell, selling products and/or services, and/or using services that infringe the Asserted Patents, including the Little Caesar application.[1]

9.      This Court has specific personal jurisdiction over Little Caesar in this action pursuant to due process and the Texas Long Arm Statute because the claims asserted herein arise out of or are related to Little Caesar's voluntary contacts with this forum, such voluntary contacts including but not limited to: (i) at least a portion of the actions complained of herein; (ii) purposefully and voluntarily placing one or more Accused Products into this District and into the stream of commerce with the intention and expectation that they will be purchased and used by customers in this District; or (iii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services, including the Accused Products, provided to customers in Texas and in this District.[2]

10.      Venue is proper in this Court under 28 U.S.C. §§ 1400(b).

---

[1] *See* Complaint, *Ogden v. Little Caesar Enters.*, Case No. 2:18-cv-12792-DML-RSW (Dkt. No. 1, at ¶¶ 2–3) (E.D. Mich. Aug. 7, 2018) (citing Little Caesar's 2017 Franchise Disclosure Document to allege that Little Caesar has "more than 4,300 U.S. stores" that are located "in all 50 U.S. states"); Answer and Counterclaim, *Sioux Falls Pizza Co. v. Little Caesar Enters.*, Case No. 4:11-cv-04047-RAL (Dkt. No. 21, at ¶¶ 12, 16) (D.S.D May 25, 2011) (alleging that, "[t]hrough its franchise system, [Little Caesar] markets, promotes and provides services to its restaurant franchisees throughout the United States" and that it "has invested substantial effort over a long period of time, including the expenditure of tens of millions of dollars . . . to cause consumers throughout the United States to recognize the Little Caesar [trademarks]."); Defendant's Statement of Material Facts, *Sioux Falls Pizza*, Case No. 4:11-cv-04047-RAL (Dkt. No. 33, at ¶¶ 10–20) (D.S.D August 1, 2011) (discussing a class action previously filed against Little Caesar in the District Court of Bexar County, Texas in which the class representatives consisted of Texas franchisees).

[2] The "Accused Products" include the Little Caesar application, including the devices on which the application runs.

---

11.     Little Caesar is registered to do business in Texas, and upon information and belief, Little Caesar has transacted business in this District and has committed acts of direct and indirect infringement in this District.

12.     Little Caesar has regular and established places of business in this District.[3]

13.     Little Caesar offers its products and/or services, including those accused herein of infringement, to customers and potential customers located in Texas and in this District.  As non-limiting examples, Little Caesar distributes the Accused Products directly to customers and through its partners, such as through the Apple App Store and Google Play.  Among other business, Little Caesar is in the business of providing mobile ordering in this District.

14.     Little Caesar operates multiple stores in this District.  These stores are regular and established places of business of Little Caesar.[4]

15.     Little Caesar's website identifies multiple stores within this District as its own stores, including in Tyler, Texas and Lindale, Texas, among others.[5]

16.     Little Caesar distributes its mobile ordering app to users located within this District. The use of Little Caesar's application in this District provides for mobile ordering from stores in this District.  Little Caesar puts its mobile ordering application in service within this District to allow users within this District to order from stores in this District in a manner alleged to infringe the asserted claims, as detailed herein.   On information and belief, Little Caesar derives a significant portion of its revenue from the use, promotion and distribution of its products and services in this District, including through the use of Defendant's application.

---

[3] *See supra* note 1 and *infra* note 5.

[4] *See supra* note 1 and *infra* note 5.

[5] *Find Ordering Store*, https://littlecaesars.com/en-us/order/pickup/stores/search/Tyler,%20TX/.

17.    A user also is able to order from Little Caesar stores in the user's local area, which includes this District.  This is including based on the location of the user's mobile device to find nearby stores, including stores in this District.[6]

18.    For example, Little Caesar provides for mobile ordering from the Tyler, Texas store, including providing a venue-specific application for that location and curbside and in-store pickup mobile ordering functionality.

  

19.    This location is, per the application, held out as a regular and established place of business of Little Caesar, including for the purposes of providing the mobile ordering functionality

---

[6] *See* PRIVACY POLICY, *Information We Collect or Store As You Access and Use the Service Generally* (July 14, 2020), https://littlecaesars.com/en-us/legal/privacy-policy#s1b ("[Little Caesar's application] may use . . . methods and technologies to store or collected Usage Information[,]" including "GPS (global positioning systems) software, RFID (radio frequency identification), cellular and Wi-Fi data, and other subsequent location-based technologies and methods later developed.  These can use geo-fencing and iBeacons to locate you so [Little Caesar] may verify your location, provide directions to [its] nearest Little Caesars, coordinate the preparation of your order based on your distance from a Little Caesars, deliver you relevant content based on your location, as well as monitor . . . the efficiency of the services [Little Caesar] provide[s] you.").

in the manner asserted to infringe the Asserted Patents.  The stores within this District are, at the very least, Little Caesar agents for the purposes of carrying out the mobile-ordering functionality asserted to infringe the claims.[7]

## V.    BACKGROUND

### A.    Tiare

20.    Tiare pioneered wireless ordering almost two decades ago, before the inception and proliferation of smartphone and tablets.  Technology executives founded Tiare to revolutionize the service industry through its mobile-ordering technology.

---

[7] *See* Exhibit 1 to Defendant's Motion to Dismiss, *Ogden*, Case No. 2:18-cv-12792-DML-RSW (Dkt No. 20-2, at ¶¶ 5.19.3–5.20) (E.D. Mich. Oct. 26, 2018) (providing a copy of Little Caesar's 2015 Franchise Agreement, which contains the following stipulation: "Little Caesar shall have the right at any time to remotely retrieve and use such data and information from Franchisee's Computer System or Required Software that Little Caesar deems necessary or desirable. Franchisee expressly agrees to strictly comply with Little Caesar's standards and specifications for all items associated with Franchisee's Computer System and any Required Software in accordance with Little Caesar's standards and specifications . . . . All data provided by Franchisee, uploaded to Little Caesar's system from Franchisee's system, and/or downloaded to Franchisee's system from Little Caesar's system, is and will be owned exclusively by Little Caesar, and Little Caesar will have the right to use such data in any manner that Little Caesar deems appropriate without compensation to Franchisee.").

21.     Tiare saw success.  It developed products.[8]  It provided solutions to businesses such as hotels, airports, restaurants, bars, and airlines.[9]  It had partners.[10]  It hired vendors and software developers.  It received numerous praise and awards for its work.[11]  And Tiare's innovations resulted in a portfolio of patents.

**B.     The Asserted Patents**

22.     This cause of action asserts infringement of two of Tiare's patents, United States Patent Nos. 8,682,729 (the "'729 Patent") and 10,157,414 (the "'414 Patent") (collectively, the "Asserted Patents" or the "Tiare Patents").

23.     A true and correct copy of the '729 Patent, entitled "Patron Service System and Method," and with Julie Werbitt as the named inventor, is attached hereto as Exhibit 1.

24.     The '729 Patent duly and legally issued on March 25, 2014.

25.     A true and correct copy of the '414 Patent, entitled "Patron Service System and Method," and with Julie Werbitt as the named inventor, is attached hereto as Exhibit 2.

---

[8] *See, e.g.*, *Tiare Technology*, https://www.tiaretech.com/; *intelliChaise*, https://web.archive.org/web/20080219175102/http://www.tiaretech.com/; *Tiare Products Provide an Eco-Friendly Platform Capable of Real-Time Updates*, https://web.archive.org/web/20100618052642/http://www.tiaretech.com:80/; *Patented intelliChaise Personal Ordering System available on Apple iPhone & iPod touch*, https://web.archive.org/web/20120411071039/http://www.tiaretech.com/product_sheets/Tiare_intellichaise_2010.pdf.

[9] *See, e.g.*, *Press Room*, https://web.archive.org/web/20080120233903/http://www.tiaretech.com/pressroom.html; *Tiare In The News*, https://web.archive.org/web/20120227194146/http://www.tiaretech.com/press.html.

[10] *See, e.g.*, *Partners*, https://web.archive.org/web/20120413225638/http://www.tiaretech.com/partners.html.

[11] *See, e.g.*, *Testimonials*, https://www.tiaretech.com/testimonials; *News*, https://web.archive.org/web/20170818210312/http://tiaretech.com/news/.

26.     The '414 Patent duly and legally issued on December 18, 2018.

27.     Tiare is the current owner by assignment of all rights, title, and interest in and under the '729 Patent.  Tiare has standing to sue for infringement of the '729 Patent.

28.     Tiare is the current owner by assignment of all rights, title, and interest in and under the '414 Patent.  Tiare has standing to sue for infringement of the '414 Patent.

29.     Tiare also has provided notice to the public of its patented inventions.  Tiare, for example, has listed on its website the patent numbers in its patent portfolio, including the Asserted Patents.[12]

30.     The Asserted Patents result from Tiare's inventive work in the early 2000s.  Tiare's solution, reflected in the Asserted Patents, provides a technical improvement to mobile ordering systems.

31.     Before Tiare's invention, conventional systems had significant drawbacks when it came to enabling a fulsome mobile-ordering system able that would also perform location tracking.[13]  These drawbacks flowed from how those systems were architected.

32.     One type of conventional ordering systems were "centrally-located kiosks."[14] These systems were an attempt to provide some degree of mobile-ordering functionality in a venue

---

[12] *See, e.g.*, *Wireless Ordering Solutions to Enhance Guest Service and Increase Revenue*, https://web.archive.org/web/20141218065508/https://www.tiaretech.com/; *Tiare Technology*, https://www.tiaretech.com/.

[13] *E.g.*, '729 Patent, 2:21–60.

[14] *E.g.*, '729 Patent, 2:21–60.

or within the vicinity of a venue, such as a restaurant or store.  These systems had the drawbacks in that they did not provide true mobile-ordering and location-tracking functionality.[15]

33.     Another type of conventional system were point-of-sale systems.  These systems could include handheld terminals that staff could use to service customers from a distance.[16]  These systems, however, "typically only allow[ed] the staff member, to take and transmit the order on behalf of the patron."[17]  These systems did not allow a patron to place the order and they were unable to perform location tracking.[18]

34.     Tiare's inventions solve these drawbacks of conventional systems, among others. Tiare reimagined the mobile-ordering architecture by tracking portable patron units (now known as a smartphone or tablet) and providing a venue-specific application.  The conventional systems had limitations because they were unable to track location because they focused on a fixed kiosk-based or mobile point-of-sale-based solution.  Tiare recognized that it could improve upon the technical aspects of these systems—through providing mobile-ordering software for a venue (such as a restaurant or store chain) on a mobile device and tracking the location of the mobile device to facilitate the fulfillment of the order.

35.     While the concept and techniques for tracking distributed mobile computing devices of the Asserted Patents are described within the context of providing services, the concept is, at its core, a technical solution of electronic location tracking of distributed mobile computing devices.  Furthermore, Tiare developed this technology well before the advent of modern mobile

---

[15] *E.g.,* '729 Patent, 2:21–60.

[16] *E.g.,* '729 Patent, 2:21–60.

[17] *E.g.,* '729 Patent, 2:21–60.

[18] *E.g.,* '729 Patent, 2:21–60.

computing devices such as smartphones and tablets.  Indeed, even location-tracking technologies such as commercial GPS and wireless computer networks (such as 802.11, Bluetooth, and higher-bandwidth cellular data networks) were in their nascent stages of use and could hardly be considered conventional at the time that Tiare came up with the technology embodied in the asserted claims.

36.     The subject matter of the asserted claims is rooted in computer technology and provides an unconventional solution to the problem of tracking locations of distributed mobile devices.  The claimed subject matter enables the centralized location tracking of one or more mobile-computing devices in real-time by integrating location-tracking technology into mobile-computing devices and communicating at least one location update over wireless communication networks, which did not exist in the pre-digital world.  Indeed, even the kiosk-based and point-of-sale-based systems lacked the technical capacity to perform the location tracking enabled by the asserted claims.  The technology utilizes what was at the turn of the century an unconventional use of location tracking sensors integrated into mobile computing devices to determine the location of the mobile computing devices based on electronic signals (*e.g.*, GPS, WiFi, Bluetooth, and/or cellular data) and convey location information to a server system over wireless computer networks.

37.     The claims do not merely recite customizing information or collecting and displaying data.  Although the overall environment is in the context of providing services, the claims do not simply recite a non-technical business practice; they instead recite a technical solution for tracking the location of mobile-computing devices (and, by extension, the users).

38.     The mobile-ordering field is one rooted in technology.  The field has seen significant patenting activity in recent years, reflecting the technological nature of the field.

Technology companies in the mobile-ordering space like DoorDash, GrubHub, Uber, Lyft, Instacart, and Postmates have filed hundreds of patent applications.[19]

39.    Tiare's Patents have likewise been cited in patent applications by technology companies such as AT&T,[20] eBay,[21] Bally Gaming,[22] Intel,[23] RockSpoon,[24] Uptown Network,[25] Quick Check,[26] and Monscierge.[27]  This further underscores that the patent claims are directed to the technical advancements discussed above.

40.    Tiare's Patents have undergone extensive examination before the U.S. Patent & Trademark Office ("Patent Office"), spanning the better part of two decades.  Tiare retained highly-skilled patent counsel to prosecute its patents.  Tiare retained Greenblum & Bernstein (including the former Acting Chief Judge of the Patent Office).  For the application that issued as the '414 Patent, Tiare retained Fish & Richardson P.C. for prosecution.  Fish is one of the country's

---

[19] *USPTO Patent Full-Text and Image Database,* http://patft.uspto.gov/netacgi/nph-Parser?Sect1=PTO2&Sect2=HITOFF&u=%2Fnetahtml%2FPTO%2Fsearch-adv.htm&r=0&p=1&f=S&l=50&Query=+%28an%2Fdoordash+or+an%2Fgrubhub+or+an%2Flyft+or+an%2F%28uber+and+technologies%29+or+an%2Finstacart+or+an%2Fpostmates%29&d=PTXT (listing over 700 patents).

[20] *See, e.g.*, 10,152,700.

[21] *See, e.g.*, 10,096,011.

[22] *See, e.g.*, 10,403,081.

[23] *See, e.g.*, 8,390,436.

[24] *See, e.g.*, 10,719,858.

[25] *See, e.g.*, 10,127,585.

[26] *See, e.g.*, 9,633,344.

[27] *See, e.g.*, 9,436,958.

---

premier patent prosecution law firms in the United States[28] and has prosecuted thousands of patents for technology companies such as Google, Intel, Twitter, Cisco, Adobe, and Apple.[29]

41.     The Patent Office's examination of Tiare's patent portfolio included extensive consideration of Section 101 issues.[30]  During prosecution, the Patent Office expressly considered the eligibility of the patent claims under 35 U.S.C. § 101, the Supreme Court's *Alice v. CLS Bank* decision, and the Federal Circuit decisions applying the *Alice* framework.[31]  The Patent Office ultimately found that the claims, including the '414 Patent claims, were valid and recited patent-eligible subject matter.

42.     The Asserted Patents claim patent-eligible subject-matter.

---

[28] *See, e.g.*, *Patent Prosecution*, https://www.fr.com/services/patent-law/patent-prosecution/ ("Our patent prosecutors obtain durable patents that take into account our clients' long-term objectives and that will be able to withstand future challenges."); *Fish & Richardson Secures More Issued Patents in 2020 than Any Other Firm* (March 3, 2021), https://www.fr.com/fish-secures-more-issued-patents-2020/ ("Fish & Richardson obtained more U.S. utility patents in 2020 than any other firm[.]"); *Fish & Richardson Named #1 PTAB Law Firm of 2020 by* Managing Intellectual Property (January 25, 2021), https://www.fr.com/top-ptab-law-firm-2020-mip/ ("Fish & Richardson has been named the #1 law firm at the Patent Trial and Appeal Board (PTAB) for 2020[.]").

[29] *USPTO Patent Full-Text and Image Database,* http://patft.uspto.gov/netacgi/nph-Parser?Sect1=PTO2&Sect2=HITOFF&u=%2Fnetahtml%2FPTO%2Fsearch-adv.htm&r=0&p=1&f=S&l=50&Query=lrep%2Ffish+and+lrep%2Frichardson&d=PTXT.

[30] *See, e.g.*, File History for App. No. 13/073,368 (considering patent claims under *Alice v. CLS Bank* and its progeny and allowing them); File History for App. No. 15/820,195 (same).

[31] *See, e.g.*, File History for App. No. 13/073,368 (considering patent claims under *Alice v. CLS Bank* and its progeny and allowing them); File History for App. No. 15/820,195 (same); Oct. 31, 2018 Notice of Allowance; October 28, 2018 Response to Office Action and Remarks; August 28, 2018 Final Office Action; March 28, 2018 Response to Office Action and Remarks; December 29, 2017 Office Action.

---

## C.      Little Caesar's Infringement

43.      Little Caesar offers a mobile-ordering solution.   It provides a venue-specific application, exemplified below:

  

44.      For example, the Little Caesar mobile-ordering solution provides a venue-specific application in which the application functionality is associated with a restaurant-chain (*e.g.*, Little Caesar), including the ordering and location-tracking functionality.   The Little Caesar mobile-ordering solution also provides a venue-specific application in which the application functionality is associated with a single store (*e.g.*, the Tyler Little Caesars), including the ordering and location-tracking functionality.

45.      Little Caesar also tracks the location of the smartphone or tablet (and, by extension, the user) to, among other things, to find local stores and products and determine when a mobile device is in the vicinity of the store, including verifying the mobile device's location, providing directions to its nearest store, coordinating the preparation of the user's order based on the user's

distance from a store, delivering to the mobile device relevant content based on the mobile device's location, and monitoring the efficiency of the services Little Caesar provides.[32]



46.     Little Caesar also requests (and for certain functionality requires) that location services are always on as part of its software functionality that tracks and updates the current location of the mobile device, including relative to a geofence, place, regions, and/or beacons).[33]

47.     Little Caesar has had notice of Tiare and the '414 and '729 Patents, at least as early as the filing of this Complaint.

---

[32] *See* source cited *supra* note 6.
[33] *See, e.g.*, source cited *supra* note 6.

48.     Little Caesar's use of the Tiare's patented technology has generated significant revenue and benefits for Little Caesar.  The Little Caesar application is one of the top Food & Drink applications listed in the Google Play and Apple App Stores.  The app has been used, on information and belief, to complete a significant amount of mobile orders.  Little Caesar's improper gains through its use of Tiare's patented technology have correspondingly harmed Tiare and its investment in its intellectual property.  This case is to redress that harm.

## VI.     CLAIMS

### A.     Infringement of the '729 Patent

49.     The allegations of each foregoing paragraph are incorporated by reference as if fully set forth herein and form the basis for the following cause of action against Defendant.

50.     The Accused Products are covered by at least claim 1 of the '729 Patent.

51.     Little Caesar has directly infringed and continues to infringe at least claim 1 of the '729 Patent in violation of 35 U.S.C. § 271(a) by, directly or through intermediaries and without Tiare's authority, making, using, selling, or offering to sell the Accused Products in the United States, or importing the Accused Products into the United States.

52.     Little Caesar has been on notice of the Asserted Patents since at least the filings of this Complaint.

53.     Little Caesar has been on notice of its infringement since at least the filing of this Complaint.

54.     Further and in the alternative, Defendant has been actively inducing infringement of at least claim 1 of the '729 Patent in violation of 35 U.S.C. § 271(b).  Users of the Accused Products directly infringed at least claim 1 of the '729 Patent when they used the Accused Products in the ordinary, customary, and intended way.  Defendant's inducements included, without

limitation and with specific intent to encourage the infringement, knowingly inducing consumers to use the Accused Products within the United States in the ordinary, customary, and intended way by, directly or through intermediaries, supplying the Accused Products to consumers within the United States and instructing and encouraging such consumers (for example, via distributing the Accused Products to mobile phones through app stores and instructing users to use the Accused Products) how to use the Accused Products in the ordinary, customary, and intended way, which Defendant knows or should know infringes at least claim 1 of the '729 Patent.  Defendant's inducements may further include, without limitation and with specific intent to encourage the infringement, knowingly inducing customers to use the Accused Products within the United States, or knowingly inducing customers to use the Accused Products within the United States, by, directly or through intermediaries, instructing and encouraging such customers to make, use, sell, or offer to sell the Accused Products in the United States, which Defendant knows or should know infringes at least claim 1 of the '729 Patent.

55.     Defendant knew or should have known of the '729 Patent but was willfully blind to the existence of the '729 Patent.  Defendant has had actual knowledge of the '729 Patent since at least as early as the filing and service of this Complaint.  By the time of the trial of this case, Defendant will have known and intended that its continued actions since receiving such notice would infringe and actively induce and contribute to the infringement of one or more claims of the '729 Patent.  Defendant's infringement of the '729 Patent has been willful and deliberate.

56.     Little Caesar performs a method of using a wireless patron unit (e.g., a smartphone or tablet) within a venue or within the vicinity of the venue.

57.     Little Caesar provides at least one patron with a wireless patron unit by either permitting the at least one patron to temporarily use a venue-owned wireless patron unit that

includes at least one venue specific application program, or by providing at least one venue specific application program to the at least one patron for downloading into a patron-owned wireless communication device that can be used during the at least one patron's visit to the venue.

58.     Little Caesar provides at least one patron with a wireless patron unit (e.g., a smartphone or tablet) by providing at least one venue specific application program (for downloading into a patron-owned wireless communication device (e.g., a smartphone or tablet) that can be used during a visit to the venue, exemplified below.

  

59.     Little Caesar connects the wireless patron unit (e.g., the smartphone or tablet) to a server enabling communication between the wireless patron unit and the server (e.g., the server in communication with the smartphone or tablet via the application), such as a Wi-Fi or cellular connection.[34]

---

[34] *See, e.g.*, PRIVACY POLICY, *Location-Identifying Technologies* (July 14, 2020) ("In addition to traditional GPS location-based services, some of the retailers and others [Little Caesar] work[s] with may install low power Bluetooth, Wi-Fi, radio transmitters, or other

60.    Little Caesar enters a patron order for at least one item or service provided by the venue into the wireless patron unit.  Little Caesar enters a patron order (e.g., a user's order) for at least one item or service provided by the venue (e.g., an item from a store menu) into the wireless patron unit (e.g., a smartphone or tablet), exemplified below:

  

61.    Little Caesar determines a current location of the wireless patron unit.  Little Caesar determines the location of, for example, a smartphone or tablet, as exemplified below:

devices in physical locations, which emit a signal that the APP can detect to pinpoint your location or otherwise interact with the App . . . ."); *Google Play Permissions*, https://play.google.com/store/apps/details?id=com.littlecaesars&hl=en_US&gl=US



62.     Little Caesar also requests (and for certain functionality requires) that location services are always on as part of its software functionality that tracks and updates the current location of the mobile device, including relative to a geofence, place, regions, and/or beacons).[35]

63.     Little Caesar updates a status of the patron order, and the current location of the wireless patron unit when the patron moves to a different location, on the wireless patron unit.

64.     Little Caesar updates a status of the patron order (e.g., a mobile order) on the wireless patron unit (e.g., a smartphone or tablet), including, for example, showing that an order was placed, in progress, cancelled, and mobile-ordering methods, pickup methods, payment options, other options and/or altered/updated.

---

[35] *See, e.g.*, source cited *supra* note 6.

65.     Little Caesar updates the current location of the wireless patron unit (e.g., a smartphone or tablet) when the patron moves to a different location.

66.     For example, Little Caesar uses the location to determine when a mobile device is in the vicinity of the store, including verifying the mobile device's location, providing directions to its nearest store, coordinating the preparation of the user's order based on the user's distance from a store, knowing when a user enters or exits a Little Caesars or arrives in the parking lot for a carryout order, delivering to the mobile device relevant content based on the mobile device's location, and monitoring the efficiency of the services Little Caesar provides:[36]

> ***Location-Identifying Technologies***. Additionally, the Services may use GPS (global positioning systems) software, RFID (radio frequency identification), cellular and Wi-Fi data, and other subsequent location-based technologies and methods later developed. These can use geo-fencing and iBeacons to locate you so we may verify your location, provide directions to our nearest Little Caesars, coordinate the preparation of your order based on your distance from a Little Caesars, deliver you relevant content based on your location, as well as monitor via the Service the efficiency of the services we provide to you. Upon downloading the App, we provide location-based services to your approximate and/or exact location information. Geo-fencing utilizes GPS and RFID signals to create a virtual boundary around a geographic area of our choosing, thereby allowing us to determine when you are in proximity to a Little Caesars. In addition to traditional GPS location-based services, some of the retailers and others we work with may install low power Bluetooth, Wi-Fi, radio transmitters, or other devices in physical locations, which emit a signal that the App can detect to pinpoint your location or otherwise interact with the App ("iBeacons"). Because iBeacons are more precise than GPS, we can improve the Services and send you more specific and relevant messages and offers. In addition, we can track the efficiency of the service you receive from Little Caesars, by knowing when you enter or exit a Little Caesars or when you arrive in the parking lot for a carryout order. You should consider the pros and cons involved in disclosing your location information to us and to other people. . . .

---

[36] *See* source cited *supra* note 6.

67.     Little Caesar also requests (and for certain functionality requires) that location services are always on as part of its software functionality that tracks and updates the current location of the mobile device, including relative to a geofence, place, regions, and/or beacons).[37]

68.     Little Caesar displays the patron order on a display of the wireless patron unit (e.g., a smartphone or tablet), exemplified below:

 

## B.     Infringement of the '414 Patent

69.     The allegations of each foregoing paragraph are incorporated by reference as if fully set forth herein and form the basis for the following cause of action against Defendant.

70.     The Accused Products are covered by at least claim 8 of the '414 Patent.

71.     Little Caesar has directly infringed and continues to infringe at least claim 8 of the '414 Patent in violation of 35 U.S.C. § 271(a) by, directly or through intermediaries and without

---

[37] *See, e.g.*, source cited *supra* note 6.

Tiare's authority, making, using, selling, or offering to sell the Accused Products in the United States, or importing the Accused Products into the United States.

72.     Little Caesar has been on notice of the Asserted Patents since at least the filings of this Complaint.

73.     Little Caesar has been on notice of its infringement since at least the filing of this Complaint.

74.     Further and in the alternative, Defendant has been actively inducing infringement of at least claim 8 of the '414 Patent in violation of 35 U.S.C. § 271(b).  Users of the Accused Products directly infringed at least claim 8 of the '414 Patent when they used the Accused Products in the ordinary, customary, and intended way.   Defendant's inducements included, without limitation and with specific intent to encourage the infringement, knowingly inducing consumers to use the Accused Products within the United States in the ordinary, customary, and intended way by, directly or through intermediaries, supplying the Accused Products to consumers within the United States and instructing and encouraging such consumers (for example, via distributing the Accused Products to mobile phones through app stores and instructing users to use the Accused Products) how to use the Accused Products in the ordinary, customary, and intended way, which Defendant knows or should know infringes at least claim 8 of the '414 Patent.   Defendant's inducements may further include, without limitation and with specific intent to encourage the infringement, knowingly inducing customers to use the Accused Products within the United States, or knowingly inducing customers to use the Accused Products within the United States, by, directly or through intermediaries, instructing and encouraging such customers to make, use, sell, or offer to sell the Accused Products in the United States, which Defendant knows or should know infringes at least claim 8 of the '414 Patent.

75.     Defendant knew or should have known of the '414 Patent but was willfully blind to the existence of the '414 Patent.  Defendant has had actual knowledge of the '414 Patent since at least as early as the filing and service of this Complaint.  By the time of the trial of this case, Defendant will have known and intended that its continued actions since receiving such notice would infringe and actively induce and contribute to the infringement of one or more claims of the '414 Patent.  Defendant's infringement of the '414 Patent has been willful and deliberate.

76.     Little Caesar performs the computer-implemented method detailed below.

77.     Little Caesar provides over a wireless communications channel (*e.g.*, over a cellular, WiFi, and/or Bluetooth network connection), a venue-specific application, exemplified below:

  

---

78.    Little Caesar communicates, by the one or more processors, with the mobile computing device over the wireless communication channel to authenticate, based on a security protocol, a user of the venue-specific application on the mobile computing device.

79.    Little Caesar communicates over a wireless communication channel (e.g., over a cellular, WiFi, and/or Bluetooth network connection) to authenticate, based on a security protocol (e.g., a login, password, or encrypted communications), a user of the venue-specific application on a smartphone.[38]

80.    Little Caesar authenticates a user via a login and password into the application (e.g., logging in via a username and password), as well as securing information associated with purchasing the order, such the user's financial account information (e.g., credit card number or Apply Pay):

  

---

[38] *See* source cited *supra* note 35.  *Google Play Permissions*, https://play.google.com/store/apps/details?id=com.littlecaesars&hl=en_US&gl=US.

81.     Little Caesar receives, by the one or more processors, location information from the mobile computing device.  Little Caesar receives location information of the mobile computing device (e.g., a smartphone or tablet) through, for example, the device's location services, as exemplified below:



82.     Little Caesar also requests (and for certain functionality requires) that location services are always on as part of its software functionality that tracks and updates the current location of the mobile device, including relative to a geofence, place, regions, and/or beacons).[39]

83.     Little Caesar determines, by the one or more processors, a location of the mobile computing device at a first time based on the location information.  Based on the location

---

[39] *See, e.g.*, source cited *supra* note 6.

information provided, Little Caesar determines the location of the smartphone or tablet, as detailed above.

84.     Little Caesar maps, by the one or more processors, the location to a region that is associated with a venue, exemplified below:



85.     Little Caesar receives, from the mobile computing device, order information for the venue that indicates a user selection of an order option from the venue-specific application.  Little Caesar receives order information from a user input that indicates a service request (*e.g.* a store order) through the venue-specific application, exemplified below:

  

86.     Little Caesar receives, by the one or more processors, updated location information from the mobile computing device.  Little Caesar receives updated location information from the mobile computing device (e.g., a smartphone or tablet).

87.     For example, Little Caesar uses the location to determine when a mobile device is in the vicinity of the store, including verifying the mobile device's location, providing directions to its nearest store, coordinating the preparation of the user's order based on the user's distance from a store, knowing when a user enters or exits a Little Caesars or arrives in the parking lot for a carryout order, delivering to the mobile device relevant content based on the mobile device's location, and monitoring the efficiency of the services Little Caesar provides:[40]

> ***Location-Identifying Technologies***. Additionally, the Services may use GPS (global positioning systems) software, RFID (radio frequency identification), cellular and Wi-Fi data, and other subsequent location-based technologies and methods later developed. These can use geo-fencing and iBeacons to locate you so we may verify your location, provide directions to our nearest Little Caesars, coordinate the preparation of your order based on your distance from a Little

---

[40] *See* source cited *supra* note 6.

Caesars, deliver you relevant content based on your location, as well as monitor via the Service the efficiency of the services we provide to you. Upon downloading the App, we provide location-based services to your approximate and/or exact location information. Geo-fencing utilizes GPS and RFID signals to create a virtual boundary around a geographic area of our choosing, thereby allowing us to determine when you are in proximity to a Little Caesars. In addition to traditional GPS location-based services, some of the retailers and others we work with may install low power Bluetooth, Wi-Fi, radio transmitters, or other devices in physical locations, which emit a signal that the App can detect to pinpoint your location or otherwise interact with the App ("iBeacons"). Because iBeacons are more precise than GPS, we can improve the Services and send you more specific and relevant messages and offers. In addition, we can track the efficiency of the service you receive from Little Caesars, by knowing when you enter or exit a Little Caesars or when you arrive in the parking lot for a carryout order. You should consider the pros and cons involved in disclosing your location information to us and to other people. . . .

88.    Little Caesar also requests (and for certain functionality requires) that location services are always on as part of its software functionality that tracks and updates the current location of the mobile device, including relative to a geofence, place, regions, and/or beacons).[41]

89.    Little Caesar determines, by the one or more processors, an updated location of the mobile computing device at a second time based on the updated location information.  Little Caesar determines updated locations of the smartphone or tablet at multiple points after receiving the updated location data at a second time, including as the device approaches the site, as detailed above.

## VII.    DAMAGES

90.    The allegations of each foregoing paragraph are incorporated by reference as if fully set forth herein.

91.    For the above-described infringement, Tiare has been injured and seeks damages to adequately compensate it for Defendant's infringement of the Asserted Patents.  Such damages,

---

[41] *See, e.g.*, source cited *supra* note 6.

to be proved at trial, should be no less than the amount of a reasonable royalty under 35 U.S.C. § 284, together with Tiare's costs and expenses, pre-judgment and post-judgment interest, and supplemental damages for any continuing post-verdict or post-judgment infringement, with an accounting as needed.

92.     As set forth above, Defendant's infringement of the Asserted Patents has been willful, such that Tiare seeks treble damages under 35 U.S.C. § 284 as appropriate.

93.     Defendant's willful infringement of the Asserted Patents renders this case exceptional under 35 U.S.C. § 285, such that Tiare seeks all reasonable attorneys' fees and costs incurred in this litigation, together with pre-judgment and post-judgment interest thereon.

## VIII.     PRAYER FOR RELIEF

Tiare respectfully requests the following relief:

a.     A judgment in favor of Tiare that Defendant has infringed each Asserted Patent, whether literally or under the doctrine of equivalents, and that such infringement is willful as described herein;

b.     A judgment and order requiring Defendant to pay Tiare its damages, costs, expenses, and pre-judgment and post-judgment interest for Defendant's infringement of each Asserted Patent as provided under 35 U.S.C. § 284, including supplemental damages for any continuing post-verdict or post-judgment infringement with an accounting as needed; and

c.     A judgment and order requiring Defendant to pay Tiare enhanced damages for willful infringement as provided under 35 U.S.C. § 284;

d.      A judgement and order enjoining Defendant from infringing upon the Asserted Patents;

e.      A judgment and order finding this case exceptional and requiring Defendant to pay Tiare its reasonable attorneys' fees and costs incurred in this litigation pursuant to 35 U.S.C. § 285, together with pre-judgment and post-judgment interest thereon; and

f.      Such other and further relief as the Court deems just and proper.

## IX.  JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Tiare requests a jury trial of all issues triable of right by a jury.

Dated: August 5, 2021

Respectfully submitted,

By:  /s/ William E. Davis, III
William E. Davis, III
Texas State Bar No. 24047416
bdavis@davisfirm.com

Christian J. Hurt
Texas State Bar No. 24059987
churt@davisfirm.com

**The Davis Firm PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

***Counsel for Tiare Technology, Inc.***